On the trial of this cause the plaintiff's counsel offered in evidence forty copies of warrants having the same numbers with those referred to in the grant to Sevier for 25,000 acres, certified by the secretary of North Carolina to be the same warrants on which Sevier's grant issued. And also certified copies of other warrants of the same numbers, previously issued, some for the same, some for other quantities, upon which grants issued to other persons, and previously to the date of Sevier's grant.
This evidence was offered for the purpose of showing that Sevier's grant had no legal foundation; not that it would directly prove it, but furnish facts from which the jury might draw such an inference, or that there never were any entries, and that the warrants were forgeries.
This evidence was objected to on the ground that it was not the best of which the nature of the case is susceptible; that, as it was admitted on the other side that the entry taker's books of Washington county, whilst a part of North Carolina, were lost, or no longer in existence, the next best *Page 434 
evidence was the production of the warrants which had been lodged in the secretary's office of North Carolina. If they could not be had, the next best evidence would be the inspection of those warrants in the secretary's office by some respectable man acquainted with the writing of the entry taker, Carter. If the first could not be had, the latter might, and no reason is given why either is not produced. And because no pertinent inference could be drawn from the evidence proposed, if received, it would tend only to mislead and inveigle the jury, and put to hazard the landed interest of the country, which ought to rest on certain, known, and fixed principles. The practice or manner in which the entry taker's office of Washington county was kept or conducted is well known. The Court will take notice of that practice; and, to show that practice, a certificate annexed to an abstract from the clerk of the board of commissioners of land claims for East Tennessee was referred to, from which it appeared that it had been the practice of the Washington entry taker's office to make a great many entries, from the opening to the closing of the office, of the same numbers,
and that nothing can be collected from that source in relation to the genuineness of the warrants on which Sevier's grant issued.
The Supreme Court of the United States has determined that the State of North Carolina had no power, after the cession, to issue grants for lands within the ceded territory, unless where some incipient right previously existed. In this cause, then, it would be competent to inquire whether there was an entry previous to the cession, or whether the warrant was a forgery. But this must be ascertained by legal evidence; what would be competent evidence on a scire facias by the State to repeal a grant, or in equity, might be receivable here. But the evidence offered, in my opinion, is neither relevant or competent. Suppose this were an indictment for the alleged forgery. The original books, if under the control of the Court, ought to be produced. They might be produced on a subpoena duces tecum to the secretary. It is true, as has been argued, that every forgery includes a fraud, but it is not true e converso There are but a few excepted cases in which we can go beyond the grant for the purpose of avoiding it. And where forgery is recognized as one, it is that offence, technically speaking. To infer it, from the fact that different warrants were to be found in the secretary's office of the same number, would be dangerous in the extreme; that he would not permit the jury to infer it, *Page 435 
and considering the practice of making entries in Carter's or Washington county entry taker's office, no such inference could be drawn from the copies proposed, if received.