R. E. & A. T. BERRY *v.* M. M. & L. WAGNER.

GRANT. *Entry-taker. Deputy.* An entry-taker is competent to make an entry for his deputy, and an entry made by the deputy in his own name, but under the direction of the principal, would not be void, but only voidable at the instance of another enterer before grant, and not by an enterer and grantee subsequent to the grant.

FROM JOHNSON.

Appeal from the Chancery Court at Taylorsville. H. C. SMITH, Ch.

BUTLER & DONNELLY and J. P. SMITH for complainants.

H. H. INGERSOLL and C. J. ST. JOHN for defendants.

COOPER, J., delivered the opinion of the court.

Bill filed July 9, 1883, to remove a cloud from the title of land. The chancellor overruled a demurrer to the bill, and the Referees report that his decree should be affirmed. The defendants except.

The complainants claim the whole land, 4000 acres, under a grant from the State issued to them April 7, 1883, founded upon an entry made April 15, 1882. They also claim the "principal part" of 100 acres of the same land under a grant from the State of May 10, 1834, based upon an entry made October 22, 1830, and *mesne* conveyances to them. The defendants derive their title by grant from the State issued in

October, 1837, to A. C. Parks and M. M. Wagner, based upon an entry of August 10, 1830, in their names. On November 12, 1858, Parks conveyed his interest in the land, describing it as an undivided half, to M. M. Wagner and M. F. Wagner. M. F. Wagner has since died leaving the defendant, L. Wagner, as his only heir. The land in controversy, the bill says, except a very small portion of the 100 acre grant, is wild, uncleared mountain land, "and no one has ever had any actual possession thereof by enclosure or otherwise."

Upon the foregoing facts, the defendants having the oldest entry to the 100 acres mentioned, and the oldest entry and grant to the residue of the 4000 acres, would have the better title under our law. But the bill alleges that the entry, under which the defendants claim, was made by A. C. Parks, one of the enterers and grantees, in proper person and in his own handwriting, M. M. Wagner, his co-enterer and co-grantee, not being present, and that Parks was at that time the deputy entry-taker of the county. The complainants insist that these facts rendered the entry, and the grant issued thereon, void. The demurrer to the bill is put upon the ground that the complainants cannot avail themselves of the supposed fraud perpetrated by Parks and Wagner in obtaining their grant, the State alone having the right to complain.

The act of North Carolina of 1777, chapter 1, which has been held to be in force in this State, provides by its 16th section that if any entry-taker desires to make an entry of land in his own name, such

entry shall be made in its proper place before a justice of the peace of the county, who shall return the entry to the county court at their next sitting, and the court shall insert the entry. The section adds: "And every entry made by or for such entry-taker in any other manner than is herein directed shall be illegal and void, and any other person may enter, survey and obtain a grant for the same." In *Egnew* v. *Cochrane*, 2 Head, 320, it was held that this section of the statute was probably in force in this State, but, if it was not, that an entry made by the entry-taker in his own name was against public policy and illegal; and therefore that an older enterer of the same land had the better right, and could in equity divest out of the entry-takers the legal title acquired by a grant issued to him on his own entry, and have the same vested in himself. The effect of such an entry upon the grant issued thereon, and whether a younger enterer could impeach the grant, were questions not passed upon but expressly reserved.

In *Rainey* v. *Aydelotte*, 4 Heis., 122, it was held that entries of land made by an entry-taker in his books in his own name were so far void, under the act of 1777, as to subsequent enterers, that the latter would be entitled to a *mandamus* to a succeeding entry-taker to compel him to insert the subsequent entries, notwithstanding the previous entries. No grants had issued on the earlier entries, and no question was therefore made or determined in relation to the validity or invalidity of such grants as against a subsequent enterer.

38—VOL. 13.

The case of *Sampson* v. *Galloway*, 5 Heis., 275, holds that an entry-taker, who has made entries in his office in his own name and obtained grants thereon, cannot come into equity by a bill *quia timet* to enjoin other persons from appropriating the lands by grant, but will be repelled from the court because of his illegal conduct, and left to his remedy at law, if he have any. In this case it appeared that complainant's son was a deputy entry-taker under his father and his father's successor, and, while a deputy, made entries in his own name which were transferred to his father. The court did not decide whether the entries of the deputy would fall within the statute, or be against public policy, nor what would be the effect of grants issued thereon as against subsequent enterers.

These cases do settle that the entry of the land by the entry-taker himself in his own name will not prevent third persons from acquiring a better right to the land by subsequent entry before grant. They do not determine whether a grant to the entry-taker on his own entry is to be regarded as void and open to a collateral attack, or only voidable at the suit of the party aggrieved, nor whether one holding under a younger entry and grant can be a party aggrieved, entitled to call in question the prior grant of the land to the entry-taker. These are the points in effect raised by demurrer in the present case, although not in so many words. For the State alone has the right to complain unless the grant is void, or voidable at the instance of a subsequent enterer and grantee.

The general rule is that a grant, being a matter of

record, cannot be impeached and declared void in a collateral proceeding not between the parties thereto, except by some evidence of like grade and dignity, or by facts apparent on the face of the grant. And therefore in ejectment between adverse claimants of land, evidence is not admissible to show that the grant upon which the interest of one of the parties depends was obtained by fraud: *Smith* v. *Winter,* 1 Tenn., 230; *Curle* v. *Barrel,* 2 Sneed, 62. And in the last of these cases the court said: "A person claiming title in virtue. of a subsequent entry and grant, with notice of a prior grant which remains in force, has no such interest as will entitle him to litigate the right of the former grantee."

Entries and grants are void, and may be resisted on a trial in ejectment, wherever there is a want of property in the grantor, or want of power in the officers appointed by the government to receive the entries or issue the grants: *Polk* v. *Windel,* 2 Tenn., 433. It was so held where the entry and grant were of lands reserved for the Indians before these lands were opened for entry: *McLemore* v. *Wright,* 2 Yer. 326. And where they were of lands in one district by an entry-taker only authorized to enter lands in another district: *Crutchfield* v. *Hammock,* 4 Hum., 203. And where they were of lands entered in an office which is vacant or closed by law: *Roach* v. *Boyd,* 1 Sneed, 135; *Woodfolk* v. *Nall,* 2 Sneed, 674.

The grant under which the defendants claim is not void for anything appearing on its face. It can

only be avoided by extrinsic proof. If that proof merely undertakes to show fraud upon the part of the grantee against the State, the authorities are uniform that the State alone can complain. A prior enterer, as in *Egnew* v. *Cochrane*, might divest the legal title of the grantee, without avoiding the grant. But an enterer and grantee subsequent to the grant "would have no such interest as will entitle him to litigate the right of the former grantee." Does the extrinsic proof tendered by the averments of the bill bring the case within any of the exceptions which authorize the going behind the grant? These exceptions, as we have seen, are when there is a want of property in the grantor, or want of power in the officers appointed by the government to receive the entry or issue the grant. There is no want of property on the part of the grantor, for the State had an undoubted title to the land granted. There was no want of power in the officers to receive the entry of property made, or issue the grant, for the entry-taker was authorized to receive entries of the land, and the Governor was authorized to issue grants therefor. The entry was allowed by law, that is, the entry-taker might make an entry in his office in a prescribed mode, and was at most irregularly and illegally made. By reason of that irregularity and illegality the land was still open to entry by others until the State condoned the fraud by issuing the grant. The act of 1777, it will be remembered, expressly empowers the entry-taker to enter lands in his office provided he pursues the mode prescribed. The irregularity was rather of form than

substance. If the State issued a grant before any third person had acquired an entry, the State alone could complain. But why should the State complain merely because there was an erroneous mode of entry, every other requisite of the law having been complied with? Influenced no doubt by these considerations, the Supreme Court of North Carolina, construing this very act of 1777, decided that the grant issued to an entry-taker upon his own entry is not void, but only voidable: *Tyrrell* v. *Mooney,* 1 Murph., 401.

This court has reached the same conclusion in construing an analogous statute. The act of 1819, chapter 1, section 29, declares that a survey which includes more than one-tenth more land than called for by the entry is a fraud upon the State, and the surveyor who makes such a survey is pronounced guilty of a misdemeanor, and indictable therefor. The act further declares that the surplus land in such survey, over and above one-tenth more than called for by the entry, shall be deemed vacant land and subject to entry. That act, like the one before us, is silent as to the effect of the error condemned when it has passed into a grant. This court held that prior to the issuance of the grant any third person might, by entering the excess of land, obtain a valid title therefor; but that after the land had been granted, no third person having intervened, the State alone could complain: *Webb* v. *Haley,* 7 Baxt., 600. The principle which underlies the decision is the same already quoted from *Curle* v. *Barrell:* "A person claiming title in virtue of a subsequent entry and grant, with

notice of a prior grant which remains in force, has no such interest as will entitle him to litigate the right of the former grantee."

If there be any doubt of the correctness of the foregoing conclusion in reference to a grant issued to an entry-taker upon an entry made by him in his own name, there can be none as to its correctness in relation to a grant to a deputy entry-taker upon an entry made by him in his own name. For the doubt would grow out of the language of the act of 1777, and this act is in terms limited to the entry-taker. It . provides a mode by which the entry-taker may make entries of land, like other citizens, without acting in his own case. In like manner, the statute which provides for the probate of deeds made by or to the clerk of the county court is in terms limited to the clerk: Rev. Code, section 2069. And there is manifestly no reason in either case why the statute should extend to deputies, for the principal officers might always act where the deputy was interested as an individual. If the deputy entry-taker desired to make an entry, the entry-taker would be competent to insert it in his books. And the presumption of law would be that he had made the entry even if written by the deputy: *Ament* v. *Brennan*, 1 Tenn. Ch., 431. An entry by the deputy himself in his own name, not under the direction of the principal, would not fall within the act of 1777, but would merely be open to the objection of being against public policy. The entry would not be void, but voidable at the instance of any party aggrieved, and

the grant issued thereon could only be impeached by the State, or, as in *Egnew* v. *Cochrane,* by a prior enterer, or by a party acquiring a superior equitable or legal title.

Upon these principles it is clear that the complainants have no right under their entry and grant of 1882, 1883, to impeach the grant under which the defendants claim, and to that extent the demurrer is well taken. It is otherwise, however, in so far as the complainants claim under the small grant. Both the entry in which that grant is founded, and the grant itself ante-date the grant of the defendants. In an action of ejectment between the parties, or other action turning upon title, the defendants could only succeed on the strength of their prior entry. But that entry would be open to the objection, upon the facts of the bill, that it was made in violation of public policy, and the land would remain open to entry and grant until the State had issued its grant founded on the first entry. The grant would not override the intervening rights. The complainants, however, could only claim against the entry to the extent of the individual half interest of Parks, for entry would be good as to Wagner, a third person, for whom the deputy might act.

Strictly the demurrer being bad in part should be altogether overruled. But we have made an exception where the decision would greatly narrow the litigation, and is manifestly for the interest of the parties: *Riddle* v. *Motley,* 1 Lea, 468.

The decree below will be reversed, the Referees'

report set aside, and a decree entered here in accordance with this opinion. The complainants will pay the costs of this court. The residue of the costs will abide the event of the litigation. Cause Remanded.